**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| GEORGIA GAMBLING RECOVERY LLC, | |
| Plaintiff, | |
| v. | Case No. 4:25-cv-00310-CDL |
| KALSHI INC. et al., | |
| Defendants. | |

**PLAINTIFF GEORGIA GAMBLING RECOVERY LLC'S
<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT .....................................................................................................2

I.     This Court Lacks Federal-Question Jurisdiction .................................................2

II.    Defendants Improperly Removed Under the Class Action Fairness Act .........................11

III.   This Court Lacks Diversity Jurisdiction Because the Non-Diverse Entities Were Not Fraudulently Joined................................................................................16

IV.   This Court Should Award Costs and Fees to Plaintiff. ......................................19

CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AST & Science LLC v. Delclaux Partners SA*,
    143 F.4th 1249 (11th Cir. 2025) ................................................................. 6-7, 8

*Atlas Data Privacy Corp. v. Blackbaud, Inc.*,
    757 F. Supp. 3d 605 (D.N.J. 2024) ..................................................................14

*Bauknight v. Monroe County*,
    446 F.3d 1327 (11th Cir. 2006) .........................................................................20

*Berg v. Leason*,
    32 F.3d 422 (9th Cir. 1994) .................................................................................6

*Boyer v. Snap-On Tools Corp.*,
    913 F.2d 108 (3d Cir. 1990)........................................................................17, 20

*Bullard v. Burlington N. Santa Fe Ry. Co.*,
    535 F.3d 759 (7th Cir. 2008) ............................................................................16

*Burrell v. Bayer Corp.*,
    918 F.3d 372 (4th Cir. 2019) ............................................................................10

*Cabalceta v. Standard Fruit Co.*,
    883 F.2d 1553 (11th Cir. 1989) ........................................................................17

*Canela v. Costco Wholesale Corp.*,
    971 F.3d 845 (9th Cir. 2020) ......................................................................14, 15

*Chicago Tribune Co. v. Bd. of Trs. of Univ. of Ill.*,
    680 F.3d 1001 (7th Cir. 2012) ............................................................................4

*Coatney v. Ancestry.com DNA, LLC*,
    93 F.4th 1014 (7th Cir. 2024) ..........................................................................19

*Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*,
    617 S.W.3d 792 (Ky. 2020)........................................................................15, 17

*Crowe v. Coleman*,
    113 F.3d 1536 (11th Cir. 1997) ........................................................................17

*Cunningham v. Cornell Univ.*,
    145 S. Ct. 1020 (2025) .................................................................................................4

*Diaz v. Sheppard*,
    85 F.3d 1502 (11th Cir. 1996) ...............................................................................6, 9

*Dyer v. Benson*,
    69 Ga. 609 (1882) ................................................................................................9-10

*Empire Healthchoice Assurance Inc. v. McVeigh*,
    547 U.S. 677 (2006) ..............................................................................................1, 3

*Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd.*,
    2024 WL 5279408 (Mass. Super. Ct. Dec. 12, 2024) ..............................................16

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
    868 F.2d 190 (6th Cir. 1989) ............................................................................ 10-11

*FMC Fin. Corp. v. Murphree*,
    632 F.2d 413 (5th Cir. 1980) ..................................................................................18

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983) .................................................................................3, 5, 6, 11, 20

*FTC v. Morton Salt Co.*,
    334 U.S. 37 (1948) ...................................................................................................4

*Futurama Imp. Corp. v. Kaysons Int'l of Miami, Inc.*,
    304 F. Supp. 999 (D.P.R. 1969) ..............................................................................18

*Gebran v. Wells Fargo Bank, N.A.*,
    2016 WL 7471292 (C.D. Cal. Dec. 28, 2016) .........................................................18

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
    446 U.S. 318 (1980) ................................................................................................14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) .................................................................................1, 2, 3, 4, 6, 9

*Gunn v. Minton*,
    568 U.S. 251 (2013) ...........................................................................................6, 8-9

*Hardin v. NBC Universal, Inc.*,
  660 S.E.2d 374 (Ga. 2008) .......................................................................9

*Hill v. Marston*,
  13 F.3d 1548 (11th Cir. 1994) ................................................................6

*Humphrey v. Viacom, Inc.*,
  2007 WL 1797648 (D.N.J. June 20, 2007) ...........................................17

*LG Display Co. v. Madigan*,
  665 F.3d 768 (7th Cir. 2011) ...................................................11, 13, 14

*Martin v. Citizens' Bank of Marshallville*,
  171 S.E. 711 (Ga. 1933) ....................................................................1, 10

*Martin v. Franklin Cap. Corp.*,
  546 U.S. 132 (2005) ..........................................................................19-20

*MDS (Can.) Inc. v. Rad Source Techs., Inc.*,
  720 F.3d 833 (11th Cir. 2013) .................................................................7

*Merrell Dow Pharms. Inc. v. Thompson*,
  478 U.S. 804 (1986) ..............................................................................5-6

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987) ...................................................................................3

*Miceli v. Smith & Nephew, Inc.*,
  2023 WL 21016 (S.D. Fla. Jan. 3, 2023) ..............................................18

*Mikulski v. Centerior Energy Corp.*,
  501 F.3d 555 (6th Cir. 2007) ...................................................................8

*Minnesota by Ellison v. Am. Petroleum Inst.*,
  63 F.4th 703 (8th Cir. 2023) ..................................................................12

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
  571 U.S. 161 (2014) .........................................................................11, 13

*MSOF Corp. v. Exxon Corp.*,
  295 F.3d 485 (5th Cir. 2002) ...................................................................5

iv

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
    954 F.3d 831 (6th Cir. 2020) .......................................................................12, 13, 14, 15

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013).......................................................................................12, 13

*Royal Canin U. S. A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025).........................................................................................3, 5, 10, 11, 20

*Sawyer v. Smith*,
    497 U.S. 227 (1990)...............................................................................................................1

*Smolko v. Mapei Corp.,*
    2021 WL 7286001 (E.D. Ky. Nov. 15, 2021)...................................................................19

*Spencer v. Specialty Foundry Prods. Inc.*,
    953 F.3d 735 (11th Cir. 2020) .........................................................................13, 15, 16

*Structural Metals, Inc. v. S & C Elec. Co.*,
    590 F. App'x 298 (5th Cir. 2014) .....................................................................................18

*Talley v. Mathis*,
    453 S.E.2d 704 (Ga. 1995)....................................................................................................9

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)............................................................................................................15

*W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
    646 F.3d 169 (4th Cir. 2011) ......................................................................................12, 13

*Warthman v. Genoa Twp. Bd. of Trs.*,
    549 F.3d 1055 (6th Cir.  2008) .........................................................................................20

*Washington v. Chimei Innolux Corp.*,
    659 F.3d 842 (9th Cir. 2011) .....................................................................................12, 13, 14

## STATUTES

Class Action Fairness Act,

    28 U.S.C. § 1332(d)..............................................................................................2, 11, 12, 13

O.C.G.A. § 13-8-3(a) .........................................................................................................3, 4

O.C.G.A. § 13-8-3(b) ..................................................................................... 3-4, 15, 16

O.C.G.A. § 16-12-20 *et seq.* ............................................................................5

O.C.G.A. § 16-12-20(4) ....................................................................................4

O.C.G.A. § 16-12-35 ........................................................................................4

18 U.S.C. § 1084(a) ..........................................................................................4

28 U.S.C. § 1331 ...........................................................................................1, 2

28 U.S.C. § 1332 ..........................................................................................1, 16

28 U.S.C. § 1447(c) .....................................................................................19, 20

**OTHER MATERIALS**

S. Rep. No. 109-14 (2005) ...............................................................................15

## SUMMARY OF ARGUMENT

On June 11, 2025, Georgia Gambling Recovery LLC ("Plaintiff") brought a quintessential state-court case against a group of companies offering illegal gambling products in Georgia. It filed a single-count complaint in the State Court of Muscogee County, Georgia, alleging violations of a Georgia statute, brought in its own name against a group of non-diverse defendants. It is the sort of case the Georgia judiciary, a "coequal part[] of our national judicial system," is uniquely equipped to handle. *Sawyer v. Smith*, 497 U.S. 227, 241 (1990). And it is the sort of case that Georgia courts have long handled without federal removal coming into play. *See, e.g.*, *Martin v. Citizens' Bank of Marshallville*, 171 S.E. 711, 713 (Ga. 1933).

But the defendants to this action (collectively, "Defendants") took a different view. On October 7, they filed two separate notices of removal. Kalshi Inc., KalshiEx LLC, Kalshi Klear Inc., and Kalshi Klear LLC (collectively, "Kalshi Defendants") filed one, to which Webull Corp., Susquehanna International Group, LLP, and Susquehanna Government Products, LLP, consented in part. *See* 4:25-cv-00310-CDL (M.D. Ga.), Dkt. No. 1 at 1 ("Kalshi NOR"). Robinhood Derivatives LLC and Robinhood Markets, Inc. filed another notice to which all then-served Defendants consented (collectively, "Robinhood Defendants"). *See* Case No. 4:25-cv-00310-CDL (M.D. Ga.), Dkt. No. 19 at 1 ("Robinhood NOR").

Defendants remove on three grounds. None establishes this Court's jurisdiction.

*First*, both notices of removal assert federal-question jurisdiction, 28 U.S.C. § 1331. But no federal question appears on the face of Plaintiff's well-pleaded complaint. Nor does this case fall within the "slim category" of other cases, *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), over which this Court may exercise federal-question jurisdiction, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005). While Defendants insist they operate on federally regulated platforms and that they have not violated the

1

federal Wire Act, those claims go only to their potential affirmative defenses—something this Court may not consider when assessing jurisdiction. Even assuming those issues were "necessarily raise[d]" by the Complaint, neither would be "substantial." *Id.* And exercising jurisdiction here would only undermine the balance Congress established between the federal and state judiciaries.

*Second*, both notices of removal invoke the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). This argument confounds. The case is not a class action in form or function. Plaintiff is an individual company suing as a relator in its own name and for its own benefit. Plaintiff has not attempted to satisfy—and could not satisfy—the traditional elements required by Federal Rule of Civil Procedure 23. That fact alone forecloses CAFA's application. Nor does Plaintiff's suit qualify as a mass action for purposes of CAFA. It does not involve the coordinated, parallel litigation of 100 or more claims. Even looking past that definitional mismatch, this litigation falls within at least two statutory carveouts to CAFA's application.

*Third*, Kalshi Defendants (alone) invoke traditional diversity jurisdiction, 28 U.S.C. § 1332—despite acknowledging that three separate defendant entities share citizenship and defeat complete diversity. Kalshi Defendants allege that *each* of those non-diverse entities was fraudulently joined. But this argument has multiple fatal flaws. For example: Against one non-diverse Defendant, the best Kalshi Defendants can argue (at 15-16 & n.14) is that Plaintiff's claims against "all Defendants" are "dubious" on the merits. But even taking that claim at face value—which this Court should not, for many reasons—that argument does not support fraudulent joinder.

All that fully justifies remand to state court pursuant to 28 U.S.C. § 1447(c). More, it warrants the award of Plaintiff's costs and attorneys' fees, as authorized by that statute.

## ARGUMENT

### I.    This Court Lacks Federal-Question Jurisdiction

Defendants justify removal under federal-question jurisdiction. *See* 28 U.S.C. § 1331.

Traditionally, "a [case] arises under federal law" *only* when an issue of federal law "appear[s] on the face of a well-pleaded complaint." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). Federal-question jurisdiction otherwise extends only to a "slim category" of cases, *Empire Healthchoice*, 547 U.S. at 701, where (1) "a state-law claim necessarily raise[s] a stated federal issue"; (2) that issue is "actually disputed and substantial"; and (3) "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *Grable*, 545 U.S. at 314-15.

The *Grable* exception applies only "[o]n rare occasions" and comes with important limitations. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Chief among them, "the determination of jurisdiction" must be "based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise." *Id.* Thus, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13-14 (1983). And the case must present "a nearly 'pure issue of [federal] law,' one 'that could be settled once and for all and thereafter would govern numerous [similar] cases.'" *Empire Healthchoice*, 547 U.S. at 700 (citation omitted).

Here, Plaintiff advances only a single cause of action, arising under Georgia's Statute of Anne. That statute provides that "[g]ambling contracts are void." O.C.G.A. § 13-8-3(a). It then provides that "[m]oney paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county."

O.C.G.A. § 13-8-3(b).  Nothing in that provision requires federal law.  *See Taylor*, 481 U.S. at 63.

Defendants nevertheless seek to fit within the narrow exception defined in *Grable*.  *See* Robinhood NOR 2-5; Kalshi NOR 24-27.  Robinhood Defendants cite (at 3) certain cases describing the Statute of Anne as permitting recovery for "illegal" gambling losses.  For their part, Kalshi Defendants argue (at 25) that because Georgia's statute permits only recovery for "gambling" losses, resolution of this claim "necessarily turn on the federal issue of whether event contracts are 'gambling contracts' within the scope of the Statute of Anne or are swap transactions regulated exclusively by the CFTC."  Both notices of removal also emphasize an allegation in the Complaint (at ¶¶ 54-55) that Defendants' event-contract offerings violate the federal Wire Act, 18 U.S.C. § 1084(a). *See* Robinhood NOR 3-4; Kalshi NOR 27.  These issues, they say, could all give rise to discussion of federal law at some indefinite future time.

Defendants do not come close to satisfying *Grable*'s demanding standard.

**1.** This case does not "*necessarily* raise" any federal question.  *Grable,* 545 U.S. at 314 (emphasis added).  Nothing in the Statute of Anne makes illegality an element of Plaintiff's case-in-chief.  While separate provisions of Georgia law provide safe harbor for certain conduct authorized by *state* law—such as the Georgia lottery, *see, e.g.*, O.C.G.A. §§ 16-12-20(4), 16-12-35—Plaintiff is "not required to plead and prove that [those statutory] exemptions pose no barrier to ultimate relief." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 709 (2025).  Rather, Georgia provides generally that "[g]ambling contracts are void." O.C.G.A. § 13-8-3(a).  "[T]he burden of proving justification or exemption under a special exception . . . [thus] rests on [the] one who claims its benefits." *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948); *see*, *e.g.*, *Chicago Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1002 (7th Cir. 2012) (exemption from state FOIA statute for information "prohibited from disclosure by federal or State law" is an affirmative

defense and cannot satisfy *Grable*).

At best, then, Defendants must invoke federal law as an affirmative defense—either by claiming that some provision of Georgia law provides safe harbor to federally regulated entities, or else by arguing that federal law preempts Georgia's own gambling restrictions. But neither move could justify removal under *Grable*. It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 13-14; *see Royal Canin*, 604 U.S. at 26 (noting jurisdiction must be "based *only* on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise.") (emphasis added).

Even if, however, Plaintiff had to prove (as part of its case-in-chief) that Defendants are ineligible for any exemption under Georgia law, Plaintiff could make that showing under state law. Georgia has sundry prohibitions on gambling-related conduct that are additive to the federal government's own restrictions and regulations. *See* O.C.G.A. §§ 16-12-20 *et seq*. Plaintiff could therefore show Defendants engaged in illegal gambling, as defined in Georgia, without reference to federal law, *see id.* This defeats *Grable* removal, because elements of a *state* statute necessarily raise "a *state* law question." *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 492 (5th Cir. 2002) (emphasis added). And here, much of the conduct alleged in the Complaint went to Defendants' role as market makers, as counterparties in illegal gambling transactions, and as conspirators in a scheme to promote illegal betting in Georgia. *See*, *e.g.*, Compl. ¶¶ 41-52.

Of course, even if this Court concluded that one or more elements of the Statute of Anne *did* incorporate federal securities law principles, that still would not "necessarily raise" a federal question. The "mere presence of a federal issue in a state cause of action does not automatically

confer federal question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). As this Circuit has repeatedly held, a case does "not arise under federal law for purposes of federal question jurisdiction, even though elements of [the] state law claim included . . . failure to comply with, federal securities laws." *Diaz v. Sheppard*, 85 F.3d 1502, 1505-06 (11th Cir. 1996) (citing *Hill v. Marston*, 13 F.3d 1548, 1550 (11th Cir. 1994)); *see also Berg v. Leason*, 32 F.3d 422, 426 (9th Cir. 1994) (similar).

Defendants' Wire Act theory fares no better. Plaintiff included allegations about that act in its Complaint *only* to head off at the pass one of Defendants' possible affirmative defenses. That decision has no jurisdictional consequences: It does not matter "if [a] defense is anticipated in the plaintiff's complaint," and it would not matter "even if both parties admit[ted] that the" defense was "the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 13-14. Of course, the Wire Act is far from "the only question truly at issue." In truth, Plaintiff could litigate this case to completion without once raising it again. After all, if Defendants raised federal authorization as a defense, Plaintiff would have various other counterarguments available to it—including ones wholly unrelated to federal law. The Wire Act may therefore not even be "raised" again, much less "necessarily raise[d]." *Grable,* 545 U.S. at 311, 314.

**2.** Even if the issues involving Defendants' affirmative defenses "necessarily raise[d]" a federal question, they still would not be "substantial" enough to sustain removal. "The substantiality requirement isn't about whether 'the federal issue [is] significant to the particular parties in the immediate suit'—as it often is—but is 'instead [about] the importance of the issue to the federal system as a whole.'" *AST & Science LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1253 (11th Cir. 2025) (quoting *Gunn v. Minton*, 568 U.S. 251, 257 (2013)). This Circuit has "recognized three factors that assist in deciding substantiality": (1) whether the case presents a

6

"pure question of law"; (2) whether the outcome "will control many other cases"; and (3) whether "the government has a strong interest in litigating in a federal forum." *AST & Science LLC*, 143 F.4th at 1253 (quoting *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) (per curiam)).  It also draws guidance from certain additional considerations the U.S. Supreme Court considered in *Gunn*.  *See AST & Science LLC*, 143 F.4th at 1255.  Here, each of those considerations cut against federal-question jurisdiction.

*First*, the case does not present any "purely legal" question.  *AST & Science LLC*, 143 F.4th at 1253.  It does not resemble those rare issues where the Supreme Court has found "substantial"— those involving "determination of the constitutional validity of an act of Congress" or a "dispute[s] th[at] centered on the action[s] of a federal agency . . . and [their] compatibility with a federal statute."  *Id.* at 1253-54 (cleaned up) (citing cases).  This case involves no constitutional question or federal agency.  Additionally, the Eleventh Circuit has held that the "complex" and "evolving" character of "federal securities laws' broker-dealer rules" and regulations "cut against—not in favor of—substantiality because they tend to render the [legal] question 'heavily fact-bound.'" *Id.* at 1254 (quoting *MDS (Can.) Inc.*, 720 F.3d at 842).  Thus, even if Defendants are right that federal securities law will feature in this case (and they are not), that would not support removal under *Grable*.

*Second*, any outcome in this case will not have any "meaningful precedential effect." *AST & Science LLC*, 143 F.4th at 1254.  Because determining compliance with federal laws and regulations is "heavily fact-bound", this Court's "resolution of [it] is unlikely to control any future cases." *Id.* (quoting *MDS (Can.) Inc.*, 720 F.3d at 842).  "[T]he highly specialized nature of securities claims . . . strongly suggests that the resolution of this issue is unlikely to impact any future constructions of claims." *AST & Science LLC*, 143 F.4th at 1254 (quoting *MDS (Can.) Inc.*,

720 F.3d at 842) (cleaned up).  But none of that matters.  Defendants' liability here will depend on how Georgia state law will categorize their conduct and offerings.  A holding here will not offer much insight to corporations peddling distinct (lawful) products in other jurisdictions.  And because Plaintiff's lawsuit names the major players in the event-contract space in Georgia, there is limited potential for further litigation under Georgia's Statute of Anne, further diminishing the value of keeping the case in federal court.

*Third*, "the government has no strong interest in having cases like this litigated and adjudicated in a federal forum." *AST & Science LLC*, 143 F.4th at 1254.  "[T]he government isn't a party, nor is there any governmental action upstream of the suit." *Id.* at 1255.  And whether or not certain corporations have violated a Georgia law imposing liability for certain types of betting is not an issue with far-reaching implications, and it "will provide little if any precedent for future cases." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 571 (6th Cir. 2007).  Georgia has maintained a Statute of Anne since its inception, and state courts have repeatedly resolved liability under it without incident.  *See* Robinhood NOR 3 (citing cases).  Once Georgia resolves Defendants' liability, future corporations will have all the clarity they need.

*Fourth*, the extraneous *Gunn* considerations similarly cut against a finding of substantiality. Even if this case presented federal securities-law-related questions, "[a]llowing a state court to decide cases like this won't undermine the development of a uniform body of securities law." *AST & Science LLC*, 143 F.4th at 1255  Rather, "securities cases will continue to be decided in federal court because . . . Congress has 'vest[ed] exclusive jurisdiction over *actual* [securities] cases' in federal courts." *Id.* (quoting *Gunn*, 568 U.S. at 261-62) (emphasis added).  "[F]ederal courts are of course not bound by state court case-within-a-case [securities] rulings." *Id.* (quoting *Gunn*, 568 U.S. at 262).  Additionally, "the possibility that a state court will incorrectly resolve a state claim

is not, by itself, enough to trigger the federal courts' exclusive jurisdiction, even if the potential error finds its root in a misunderstanding of securities law." *Id.* (quoting *Gunn*, 568 U.S. at 263) (cleaned up).

**3.** If, however, this Court found the above requirements satisfied, *Grable* removal would still be inappropriate because a "federal forum" would disrupt the "congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. Congress "ha[s] made no provision for a federal cause of action" permitting the recovery of unlawful gambling losses, so it is unlikely that it "would have meant to welcome any state-law tort case implicating federal law" into federal court. *Id.* at 318-19. And exercising jurisdiction here would deprive Georgia courts of the chance to interpret the scope of their own anti-gambling regulations, merely because federal law may *also* regulate some aspects of certain Defendants' conduct. *Cf. Diaz*, 85 F.3d at 1505-06.

**4.** Defendants' counterarguments are unavailing.

Robinhood Defendants cite (at 3) various cases describing Georgia's Statute of Anne as redressing only "illegal" gambling. But none of those cases so much as suggest that a plaintiff must prove, as part of its case-in-chief, that that Defendants are *not* exempted from liability under some other provisions of Georgia or federal law. *Hardin v. NBC Universal, Inc.* held only that plaintiffs must allege a "gambling contract," supported by "gambling consideration," and dismissed because the plaintiffs had not pleaded any "bet or wager." 660 S.E.2d 374, 375-76 (Ga. 2008). Similarly, *Talley v. Mathis* declined to invalidate an agreement to split a legally purchased state lottery ticket under the Statute of Anne because the plaintiff did "not allege that he and [defendants] contracted to gamble against one another and that appellees lost" but rather that defendants and plaintiff "jointly contracted to gamble against the State of Georgia and that they won." 453 S.E.2d 704, 705-06 (Ga. 1995). *Dyer v. Benson* stands only for the non-controversial

proposition that all manner of "betting" is "gaming," and therefore equally "illegal." *Dyer v. Benson*, 69 Ga. 609, 610 (1882). And *Martin v. Citizens' Bank of Marshallville* analyzed the "*definition* of a gambling contract," and nowhere suggests that a plaintiff has the burden of proving that gambling is not legal under other statutory provisions. 171 S.E. 711, 713 (Ga. 1933) (emphasis added).

Of course, even if those cases showed that establishing illegality was a required element of Plaintiff's case (and they do not not) that still would not "necessarily raise" a *federal* question for purposes of *Grable*. Plaintiff could argue that Defendants failed to satisfy that condition as a matter of state law. *See supra* at 5. And even if Plaintiff had to show Defendants' non-compliance with federal securities laws as an element of its case-in-chief, that still would fail to satisfy *Grable*'s demanding standard. *See supra* at 5-6.

Defendants also make much of the fact that the Complaint includes allegations that Defendants' offerings violate the federal Wire Act. *See* Robinhood NOR 3; Kalshi NOR 27. But that is not an element of Plaintiff's case-in-chief, and Plaintiff included those allegations only to anticipate an *affirmative defense* that Defendants raise. This Court cannot "consider affirmative defenses that might be anticipated in the complaint," even if the Complaint expressly contemplates those affirmative defenses and discusses federal law in the process. *Burrell v. Bayer Corp.*, 918 F.3d 372, 381 (4th Cir. 2019); *Royal Canin*, 604 U.S. at 26 (noting jurisdiction cannot be based on "any issue the defendant may raise").

Defendants also cite various federal statutory and regulatory provisions which they claim may apply to their event contract offerings. *See*, *e.g.*, Kalshi NOR 26 (citing 7 U.S.C. §§ 2(a)(1)(A); 1a(47)(A)(ii)); Robinhood NOR 3-4 (citing 7 U.S.C. §§ 7a-2(c)(1); 1a(6); 17 C.F.R. § 40.2). But "reliance upon federal regulations" as defenses does not confer federal-question

jurisdiction. *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 194 (6th Cir. 1989). And even if Defendants argued (they have not) that those regulations are so pervasive as to amount to field preemption, that *still* would not furnish a basis for removal. *See Franchise Tax Bd*., 463 U.S. at 14 (noting "a case may not be removed to federal court on . . . the defense of preemption"); *Royal Canin*, 604 U.S. at 26 (citing *Franchise Tax Bd.*).

## II.  Defendants Improperly Removed Under the Class Action Fairness Act

Defendants also justify removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). That statute "loosened the requirements for diversity jurisdiction" in light "Congress' overriding concern . . . with class actions" and "certain requirements of federal diversity jurisdiction" that "had functioned to 'kee[p] cases of national importance' in state courts rather than federal courts." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165, 173 (2014) (quoting CAFA § 2). Under CAFA, a federal court has original jurisdiction over a class action when (1) there is *minimal* diversity of citizenship between the parties; (2) the aggregate amount in controversy exceeds $5 million; and (3) the proposed class contains at least 100 members. 28 U.S.C. § 1332(d)(2)-(6)) (emphasis added).

However, CAFA defines the phrase "class action[s]" narrowly, to include only a "civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons *as a class action*." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). Thus, for CAFA to apply: (1) "[a] class action must be brought *as a class action*"; (2) to constitute a class action, the claim "must be brought under Rule 23 or the state equivalent"; and (3) a state statute is "similar" to Rule 23 only if it features all the core requirements of a class action—namely, numerosity, typicality, commonality, and adequacy of representation. *LG Display Co. v. Madigan*, 665 F.3d 768, 771-72 (7th Cir. 2011) (emphasis in original).

11

Every circuit to have considered the issue has taken that view. *See*, *e.g.*, *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 215-17 (2d Cir. 2013) (because case "was filed not by a class representative on behalf of similarly-situated plaintiffs," CAFA did not apply); *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011) ("Congress undoubtedly intended to define 'class action' in terms of its similarity and close resemblance to Rule 23."); *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 837 (6th Cir. 2020) (CAFA does not apply where suit does "not satisfy the core requirements of numerosity, commonality, [and] typicality"); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 717 (8th Cir. 2023) (where a statute "does not provide a similar mechanism to Rule 23," a "lawsuit is not a removable 'class action' under CAFA"); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 849 (9th Cir. 2011) (to be removable as a class action under CAFA, "[a] state action must be filed under a statute that is both 'similar' to Rule 23 *and* authorizes an action 'as a class action' ").

CAFA's loosened diversity requirements also extends to certain other statutorily prescribed "mass action[s]." But to qualify, a lawsuit must be one "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). CAFA then "excludes" from that definition of "mass action[s]" (1) "any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State," *id.* § 1332(d)(11)(B)(ii), (I); and (2) "any civil action in which" the claims are not asserted "on behalf of individual claimants or members of a purported class," *id.* § 1332(d)(11)(B)(ii), (III).

Here, Defendants' CAFA removal theory does not survive a glance at the Complaint's caption, much less a skim of its contents. Plaintiff has not brought a class action in form or in

function.  Rather, "this action is brought by a single entity."  *Nessel*, 954 F.3d at 837.  Because Plaintiff does not allege "to have [itself] suffered any injury at the hands of Defendants or to otherwise assert claims that are typical to" the gamblers who suffered injury, "the core requirements of Rule 23 are not satisfied."  *Id.* at 836.  And, notably, Plaintiff did not "join any of the affected consumers as named plaintiffs in [its] lawsuit."  *Id.* at 836.

It is even more obvious that Plaintiff has not brought a qualifying "mass action."  The Complaint does not involve multiple "persons" seeking monetary relief in parallel, as CAFA requires.  28 U.S.C. § 1332(d)(11)(B)(i); *see AU Optronics*, 571 U.S. at 168 ("To start, the statute says '100 or more persons,' not '100 or more named or unnamed real parties in interest.'").  Even overlooking CAFA's "plain text"—which this Court may not do, *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 741 (11th Cir. 2020)—its express limitations on mass actions would exempt this litigation.  The gambling losses Plaintiff seeks to collect on each arose from an "occurrence in the State" (in the form of a wager placed by Georgia residents on Defendants' platforms), and each loss "resulted in injuries in that State" only.  28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Additionally, the claims are asserted by a single entity suing in its own name and are not asserted "on behalf of individual claimants or members of a purported class," *id.* § 1332(d)(11)(B)(ii)(III).

Notably, even "representative" suits do not qualify for CAFA removal where they do not satisfy the requirements of Rule 23.  It follows, *a fortiori*, that Plaintiff's non-representative suit cannot fall within CAFA's sweep either.  Significant precedent supports this point.  For example: Every "circuit court to have squarely considered the question" has concluded that representative actions brought by state attorneys general on behalf of their citizens do not qualify as "class actions within the meaning of CAFA."  *Chimei Innolux*, 659 F.3d at 848-49; *see, e.g.*, *Nessel*, 954 F.3d at 837-38; *Purdue*, 704 F.3d at 216; *McGraw*, 646 F.3d at 173-79; *LG Display Co.*, 665 F.3d at 772.

The same principle applies also to government agency suits brought in a representative capacity. *See, e.g.*, *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333-34 & n.16 (1980) ("[T]he EEOC may . . . seek specific relief for a group of aggrieved individuals without first obtaining class certification."). It applies to suits brought under California's Private Attorneys General Act (a close analogue to the Statute of Anne)—even where the *qui tam* relator purports to proceed "on behalf of" other citizens and captions the complaint a "Class Action." *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850-55 (9th Cir. 2020). And it applies where corporations assigned the legal claims of numerous individuals sue to recover on each in a single action. *Atlas Data Privacy Corp. v. Blackbaud, Inc.*, 757 F. Supp. 3d 605, 610, 618-22 (D.N.J. 2024). Courts have similarly rejected claims that representative actions qualify as "mass action[s]" under CAFA, on the rare occasion a litigant suggests otherwise. *See, e.g.*, *LG Display Co.*, 665 F.3d at 772.

Defendants rest their argument for CAFA removal on a misreading of a single clause in the Complaint, which states that "[u]pon information and belief, thousands of individuals within Georgia have lost—and continue to lose—money playing gambling." Compl. ¶ 66; *see* Robinhood NOR 5; Kalshi NOR 21. But an allegation that third parties suffered loss does not mean that Plaintiff represents those third parties. Even if it did, stray language in a complaint could not override Plaintiff's deliberate choice not "to join any of the affected [gamblers] as named plaintiffs in [its] lawsuit." *Nessel*, 954 F.3d at 836. And it would not matter even if Plaintiff did "represent" individual gamblers, as while "class actions are always representative actions," "representative actions are not necessarily class actions." *Chimei Innolux*, 659 F.3d at 848.

Kalshi Defendants offer certain other arguments, but they fare no better. They go on at length (at 19-21) about Congress's motives for passing CAFA, citing legislative history that suggests that "lawsuits that resemble a purported class action should be considered class actions."

But this Court "should not, cannot, and do[es] not use legislative history[] to navigate around what CAFA's plain text tells [it] to do." *Spencer*, 953 F.3d at 741. If anything, "federalism concerns" require rejecting CAFA's extension to edge cases absent a "clear statement" to the contrary. *Nessel*, 954 F.3d at 837-38 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 788 (2000)). Congress's choice to meticulously define class actions and mass actions compels that view. *Chimei Innolux*, 659 F.3d at 848. And even taking the cited legislative history at face value, this case does not remotely "resemble a purported class action." S. Rep. No. 109–14, at 35 (2005).

They also suggest (at 21) that the Statute of Anne's condition that a third-party plaintiff cannot "bring suit until after the six-month period" creates "a procedure and imposes constraints 'similar' to Rule 23." Not nearly. When the Statute of Anne authorizes "any person" to sue after that period, it imposes none of the ordinary requirements of a class action. *See Nessel*, 954 F.3d at 835. Additionally, the third-party recovery provision is a different cause of action that requires the plaintiff to share its recovery with the "educational fund of the county," O.C.G.A. § 13-8-3(b), much like the *qui tam* statutes that CAFA does not reach. *Canela*, 971 F.3d at 850-55.

Kalshi Defendants stress that contemporary Statute of Anne suits are sometimes pleaded as putative class actions. Kalshi NOR 21. Sometimes. But that is not the exclusive practice. *See*, *e.g.*, *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 796 (Ky. 2020) (countenancing a State's "lawsuit to recover statutory treble damages for money lost by its citizens"). Moreover, those class actions generally seek to collect damages owed to the individual gamblers within the initial recovery window for gambling-related losses. Here, Plaintiff seeks to recover *only* for money outside Georgia's six-month window.

Kalshi Defendants also gesture (at 22) to certain "administrative difficulties" that they believe require CAFA's application. These purposivist arguments cannot override the statute's

plain text, *Spencer*, 953 F.3d at 741, and they make little sense on their own terms. There is no need for a "class-action-like mechanism[]" or for an adjudication of "each challenged transaction individually." Kalshi NOR 22. Instead, Plaintiff can seek discovery for all gambling-related losses in Georgia that predate the six-month window by the prescribed four-year statute of limitations. O.C.G.A. § 13-8-3(b). And the fact that five other States must interpret the scope of their own Statutes of Anne hardly amounts to unworkable "clog[]," as Kalshi Defendants suggest (at 22).

As for the mass-action backup theory, Kalshi Defendants' own cited authority (at 23) undermines their position. *Fair Gaming Advocates MA LLC v. VGW Holdings Ltd.*, 2024 WL 5279408, at *2 (Mass. Super. Dec. 12, 2024), has nothing to do with CAFA, and instead offers (without explanation) that a corporate entity suing under a Statute of Anne "stand[s] in the shoes" of gamblers. Even if Plaintiff's suit were representative in that way, though, it would not make the suit a mass action under CAFA. And, in any event, Plaintiff's suit would fall within two of CAFA's statutory exemptions. As for *Bullard v. Burlington Northern Santa Fe Railway Co.*, suffice to note Plaintiff has not "proposed" a "trial covering 100 or more plaintiffs." 535 F.3d 759, 762 (7th Cir. 2008). To read that language is to understand why Kalshi Defendants' theory falls flat.

## III.    This Court Lacks Diversity Jurisdiction Because the Non-Diverse Entities Were Not Fraudulently Joined

Kalshi Defendants offer (at 9-12) one final (and still-more-implausible) basis for removal: garden-variety diversity jurisdiction. *See* 28 U.S.C. § 1332. This faces an obvious problem. By Kalshi Defendants' own admission (at 11-12), the parties lack complete diversity, which Section 1332 generally requires. Three of the defendant entities—Susquehanna International Group, LLP ("SIG"), Susquehanna Government Products, LLLP ("SGP"), and Webull Corp.—share Florida citizenship with Georgia Gambling Recovery LLC. *Id.* Kalshi Defendants try to get around this by arguing that Plaintiff fraudulently joined each of those entities.

"The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). That burden is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The removing party must show that there exists "*no* possibility the plaintiff can establish *any* cause of action against" the fraudulently joined defendant. *Cabalceta*, 883 F.2d at 1561 (emphasis added). Defendants fall well short of satisfying that standard. Plaintiff had ample reason for naming each of the three contested entities. And if even one was properly joined, diversity jurisdiction fails.

***SGP and SIG.*** Kalshi Defendants concede (at 12) that SGP and SIG are "citizen[s] of Florida for purposes of diversity." Yet they insist those entities do not belong in this case because (in their opinion) Plaintiff's claims against those entities are "dubious" on the merits. *Id.* at 15-16 & n.14. This is not an actual argument for fraudulent joinder. The claims against SGP and SIG do not differ from the claims Plaintiff has brought against the other defendant entities. Kalshi Defendants concede as much: They argue (at 16 & n.14) that this supposed weakness on the merits is not limited to SGP and SIG but instead "is the case for *all* Defendants." (Emphasis added). They do not actually believe SIG or SGP (in particular) were fraudulently joined. They believe *all* Defendants should be dismissed for failure to state a claim. Kalshi Defendants, in other words, call upon this Court to "step[] . . . from the threshold jurisdictional issue [of fraudulent joinder] into a decision on the merits." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). That is precisely what this Court may not do weighing the appropriateness of removal.

Nor do Kalshi Defendants' arguments on the merits impress. They cite (at 15) a lone opinion for the proposition that a Statute of Anne winner "must be a participant." *See Humphrey v. Viacom, Inc.*, 2007 WL 1797648, at *10 (D.N.J. June 20, 2007). But other, better-reasoned decisions point the other way. *See Brown*, 617 S.W.3d at 806-08. And, in any event, Plaintiff here

17

*has* alleged that SGP and SIG "participa[te]" in gambling. *Cf.* Kalshi NOR 15. Specifically, it alleges that SGP and SIG in concert serve as "market maker[s]" for Kalshi, "buying and selling event contracts on the platform." Compl. ¶¶ 13-14. And it alleges that those "market makers" specifically "serve as counterparties to each wager" that Georgia gamblers entered, directly "facing off against the State's residents in the process." *Id.* ¶ 28. In other words, SGP and SIG directly bet against and won money directly from Georgia gamblers. That makes them "winners" under the Statute of Anne, even applying the Kalshi Defendants' overly cabined reading.

*SIG.* Kalshi Defendants separately argue (at 17) that SIG is fraudulently joined as a parent company. But even where a complaint does not specifically allege the relationship between a parent and its subsidiary, that does not constitute fraudulent joinder where a plaintiff could "*possibly* state a claim against" the parent, such as where it was not "*impossible* for [the parent] to [have] exercise[d] control" over the subsidiary in practice. *Gebran v. Wells Fargo Bank, N.A.*, 2016 WL 7471292, at *9 (C.D. Cal. Dec. 28, 2016) (emphases added); *see also Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298, 307 (5th Cir. 2014) (similar); *Miceli v. Smith & Nephew, Inc.*, 2023 WL 21016, at *3 (S.D. Fla. Jan. 3, 2023) (dismissing fraudulent joinder where parent company was alleged to have worked with subsidiary). Even mere recognition of the "interlocking business activities of parent and subsidiary corporations" can "warrant the conclusion that the parent corporation . . . is a proper party in interest." *Futurama Imp. Corp. v. Kaysons Int'l of Miami, Inc.*, 304 F. Supp. 999, 1004 (D.P.R. 1969).

Here, it is far from "impossible" that Plaintiff could collect against SIG. States may hold parent companies liable under "corporate disregard doctrine" for a variety of reasons. *See FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 (5th Cir. 1980). And the Complaint specifically alleges that the Susquehanna entities—in concert with each other—violated Georgia's Statute of

Anne in various ways. *See*, *e.g.*, Compl. ¶¶ 13, 14, 50, 52, 55. At minimum, Plaintiff is entitled to jurisdictional discovery into the interrelationship between Susquehanna entities, to ensure that Plaintiff has named all entities that could potentially be liable for the conduct described in the Complaint. *See*, *e.g.*, *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1023 (7th Cir. 2024) ("Jurisdictional discovery revealed that the Spanish companies, as parents of the American subsidiaries, 'were heavily involved in negotiating and approving the joint venture agreements.' "). Finally, even if SIG was improperly named, Kalshi Defendants concede that SGP engaged in the bookmaking and is a Florida citizen. That fact alone forecloses diversity jurisdiction.

**Webull.** Kalshi Defendants also insist (at 13-14) that Plaintiff lacks standing against Webull Corp. because its partnership with Kalshi began in 2025, and the Complaint was filed before the Statute of Anne's six-month window for gamblers to sue elapsed. But Plaintiff seeks ongoing damages, which can "continue to accrue after a complaint is filed." *Smolko v. Mapei Corp.*, 2021 WL 7286001, at *3 (E.D. Ky. Nov. 15, 2021). By now, the six months have come and gone. Plaintiff therefore has a live claim for damages against Webull Corp.

Kalshi Defendants separately claim (at 14-15) that Webull Corp. is simply a holding company, and that the specific misconduct Plaintiff alleged was carried out only by a wholly owned subsidiary, Webull Financial LLC. But regardless whether Plaintiff amends its Complaint to add additional Webull entities, it is not fraudulent to *also* name the parent, Webull Corp. It is hardly "impossible" that Webull Corp. is itself liable under Georgia's Statute of Anne. *Supra* at 18. In any event, nothing turns on whether it is. SGP and SIG separately foreclose diversity jurisdiction.

## IV.    This Court Should Award Costs and Fees to Plaintiff.

This Court's "order remanding the case" should "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). That relief is appropriate wherever "the removing party lacked an objectively reasonable basis for

seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). This standard—meant to "guide the district courts"—requires a balancing inquiry committed to this Court's discretion. *Bauknight v. Monroe County*, 446 F.3d 1327, 1329 (11th Cir. 2006).

None of Defendants' grounds for removal were "objectively reasonable." Their invocation of federal-question jurisdiction depended *entirely* on points germane only to affirmative defenses, flouting decades of U.S. Supreme Court precedent in the process. *See*, *e.g.*, *Royal Canin*, 604 U.S. at 26; *Franchise Tax Bd.*, 463 U.S. at 9-10. And Plaintiff's "mention of" the federal Wire Act "in a carefully drafted complaint that pled only state-law claims" does not make Defendants' "basis for removal . . . 'objectively reasonable.'" *Warthman v. Genoa Township Bd. of Trustees*, 549 F.3d 1055, 1064 (6th Cir. 2008). That "reference . . . should be read in the context of the entire complaint," which gave Defendants ample context to "ascertain whether the reference states a federal cause of action or" (as here) "simply supports an element of a state claim." *Id.*; *see id.* at 1059-64 (holding district court abused its discretion in denying fees based on Plaintiff's citation to federal law in its complaint).

Defendants' other grounds for removal are still more unreasonable. They removed, under the Class Action Fairness Act, a case that is not a class (or mass) action in form or in function. And the Kalshi Defendants' fraudulent-joinder theory faces too many problems to count. Among them: They argue SGP was fraudulent joined only because the case against it is "dubious" on the merits—a point not even germane to a fraudulent-joinder theory, *see Boyer*, 913 F.2d at 112, and a point they concede (at 15-16 & n.14) applies equally to "all Defendants," not just to SGP.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court remand this case to Georgia state court, and that it enters an order "requir[ing] payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

20

Date:  November 3, 2025                    Respectfully submitted,

                                           /s/ *David C. Rayfield*
                                           _____
                                           David C. Rayfield
                                           Georgia Bar No.: 596706
                                           David R. Helmick
                                           Georgia Bar No. 344210
                                           WALDREP, MULLIN & CALLAHAN, LLC
                                           111 Twelfth Street, Suite 300
                                           P. O. Box 351
                                           Columbus, GA  31902-0351
                                           Tel: (706) 320-0600
                                           Fax: (706) 320-0622
                                           davidrayfield@waldrepmullin.com
                                           dhelmick@waldrepmullin.com

                                           Derek T. Ho (*pro hac vice forthcoming*)
                                           Kyle B. Grigel (*pro hac vice forthcoming*)
                                           KELLOGG, HANSEN, TODD, FIGEL &
                                               FREDERICK, P.L.L.C.
                                           1615 M Street, N.W., Suite 400
                                           Washington, D.C. 20036
                                           Tel.: (202) 326-7900
                                           Fax: (202) 326-7999
                                           dho@kellogghansen.com
                                           kgrigel@kellogghansen.com

                                           *Counsel for Georgia Gambling Recovery LLC*

## CERTIFICATE OF SERVICE

This is to certify that on this date I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted, this 3rd day of November, 2025.

*/s/ David C. Rayfield*
David C. Rayfield
Georgia Bar No.: 596706