**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA**

| | |
|---|---|
| GEORGIA GAMBLING RECOVERY LLC, | |
| Plaintiff, | |
| v. | Case No. 4:25-cv-00310-CDL |
| KALSHI INC. et al., | |
| Defendants. | |

**PLAINTIFF GEORGIA GAMBLING RECOVERY LLC'S
<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

SUMMARY OF ARGUMENT ....................................................................................................1

ARGUMENT ..............................................................................................................................1

I.      This Court Lacks Federal-Question Jurisdiction ..............................................................1

        A.      Plaintiff's Claim Does Not "Necessarily Raise" Any Federal Issue. ....................1

        B.      Any Federal Issue Would Not Be "Disputed and Substantial"...............................5

        C.      The Federal-State Balance Cuts Against Removal ................................................6

II.     This Court Cannot Remove Under CAFA.........................................................................6

III.    Kalshi Defendants' Invocation of Diversity Jurisdiction Fails..........................................9

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. 3M Co.*,
    65 F.4th 802 (6th Cir. 2023) ................................................................. 7

*AST & Sci. LLC v. Delclaux Partners SA*,
    143 F.4th 1249 (11th Cir. 2025) ........................................................ 5, 6

*Atlas Data Privacy Corp. v. Blackbaud, Inc.*,
    757 F. Supp. 3d 605 (D.N.J. 2024) ...................................................... 9

*Beran v. U.S.*,
    759 F. Supp. 886 (D.D.C. 1991) ........................................................ 10

*Cabalceta v. Standard Fruit Co.*,
    883 F.2d 1553 (11th Cir. 1989) ......................................................... 10

*Canela v. Costco Wholesale Corp.*,
    971 F.3d 845 (9th Cir. 2020) ............................................................ 8, 9

*Chamberlain v. Employers' Liab. Assur. Corp.*,
    194 N.E. 310 (Mass. 1935) ................................................................. 4

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) ........................................................... 7

*College of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*,
    585 F.3d 33 (1st Cir. 2009) ................................................................. 7

*Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*,
    617 S.W.3d 792 (Ky. 2020) ............................................................. 4, 8

*Diaz v. Sheppard*,
    85 F.3d 1502 (11th Cir. 1996) ............................................................. 2

*Dyer v. Benson*,
    69 Ga. 609 (1882) .............................................................................. 3

*Empire Healthchoice Assurance Inc. v. McVeigh*,
    547 U.S. 677 (2006) ........................................................................... 1

*Erie Ins. Exch. v. Erie Indem. Co.*,

722 F.3d 154 (3d Cir. 2013) ............................................................................9

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983) ....................................................................................2, 6

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ................................................................................1, 6

*Hardin v. NBC Universal, Inc.*,
    660 S.E.2d 374 (Ga. 2008) .....................................................................3, 8

*Hill v. Marston*,
    13 F.3d 1548 (11th Cir. 1994) ....................................................................2

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
    659 F.2d 1259 (4th Cir. 1981) ....................................................................7

*LG Display Co. v. Madigan*,
    665 F.3d 768 (7th Cir. 2011) ......................................................................7

*Martin v. Citizens' Bank of Marshallville*,
    171 S.E. 711 (Ga. 1933) ....................................................................2, 3, 8

*Nat'l Commc'ns Ass'n, Inc. v. AT&T Corp.*,
    238 F.3d 124 (2d Cir. 2001) ........................................................................3

*Patriots for Legal Equality, LLC v. Draft Kings, Inc.*
    2016 WL 11972483 (Mass. Super. Ct. Feb. 23, 2016) ................................8

*R.I. Fishermen's All., Inc. v. R.I. Dep't of Env't Mgmt.*,
    585 F.3d 42 (1st Cir. 2009) ......................................................................4, 5

*Salamon v. Taft Broad. Co.*,
    475 N.E.2d 1292 (Ohio Ct. App. 1984) ......................................................8

*Shenk v. Cohen*,
    51 A.2d 298 (D.C. 1947) .............................................................................3

*Spencer v. Specialty Foundry Prods. Inc.*,
    953 F.3d 735 (11th Cir. 2020) .....................................................................9

*Sutton v. Sullivan & Carden*,
    364 S.E.2d 887 (Ga. Ct. App. 1988) ...........................................................3

*Talley v. Mathis*,
    453 S.E.2d 704 (Ga. 1995)...........................................................................2

*Tribe v. Polis*,
    2025 WL 3459865 (D. Colo. Oct. 23, 2025) ...........................................5

*Washington v. Chimei Innolux Corp.*,
    659 F.3d 842 (9th Cir. 2011) ...................................................................8-9

*Weischelbaum v. Hayslip*,
    56 S.E. 413 (Ga. 1907)..............................................................................4

*Williams v. Employers Mutual Casualty Co.*,
    845 F.3d 891 (8th Cir. 2017) .....................................................................7

**STATUTES**

Class Action Fairness Act,

    28 U.S.C. § 1332(d)...................................................................................9

O.C.G.A. § 13-8-3(b) ........................................................................................2, 7, 8

O.C.G.A.§ 16-12-20 *et seq.* ...................................................................................4

O.C.G.A.§ 16-12-21 ..............................................................................................3

28 U.S.C. § 1447(c) .............................................................................................10

**OTHER MATERIALS**

Order, *Commonwealth v. KalshiEX LLC*,
    No. 25-cv-12595-RGS (D. Mass. Oct. 28, 2025), Dkt. No. 34 ...............4

## SUMMARY OF ARGUMENT

Defendants offer no valid basis for removal. By any measure, their alleged federal issues fall short of satisfying *Grable*'s demanding standard. The Class Action Fairness Act ("CAFA") does not apply because Plaintiff's suit does not resemble a class (or mass) action. And there is no fraudulent joinder (and hence no diversity) because—among other issues—quibbles with the merits of Plaintiff's case against *all* Defendants do not make Plaintiff's naming of *specific* Defendants fraudulent. Plaintiff respectfully requests that this Court remand this case to state court, where it belongs. And it asks for costs and fees under 28 U.S.C. § 1447(c).

## ARGUMENT

### I.     This Court Lacks Federal-Question Jurisdiction

Defendants acknowledge their only path to federal-question jurisdiction runs through *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). But they do not come close to proving this case falls in the "slim category" covered by it. *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

### A.     Plaintiff's Claim Does Not "Necessarily Raise" Any Federal Issue.

This litigation "necessarily raise[s]" no federal issue. *Grable*, 545 U.S. at 314-15.

**1.**     Defendants' lead argument is that Georgia's Statute of Anne contains an unstated requirement that Plaintiff prove—as part of its case-in-chief—that Defendants' gambling offerings were illegal. *See* Robinhood Opp'n 6-10, Dkt. No. 39; Kalshi Opp'n 2-6, Dkt. No. 40. That showing, Defendants insist, will require Plaintiff proving federal law does *not* shield Defendants' conduct. Defendants' attempt to transmute the affirmative defense of federal preemption into a statutory requirement of Georgia state law fails for multiple reasons.

*First*, as the Eleventh Circuit has repeatedly stressed, a case does "not arise under federal law for purposes of federal question jurisdiction, *even though elements of [the] state law claim*

1

*include[] . . . failure to comply with[] federal securities laws.*"  Mot. 6-7 (emphasis added) (quoting *Diaz v. Sheppard*, 85 F.3d 1502, 1505-06 (11th Cir. 1996) (citing *Hill v. Marston*, 13 F.3d 1548, 1550 (11th Cir. 1994)).  Robinhood Defendants simply ignore those authorities.  And Kalshi Defendants' only answer—found in a single sentence in a footnote (at 10 n.5)—errantly describes them as implicating less "important" federal interests.  They have nothing to do with "importance."  Nor do Defendants cite any contrary authority.

*Second*, illegality is not an element of Plaintiff's case-in-chief.  *Cf. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13-14 (1983).  The statute permits "any person" to sue for "[m]oney paid . . . upon a gambling consideration."  O.C.G.A. § 13-8-3(b).  Georgia courts then define "gambling consideration" to mean "consideration [that] must fall to the one [party] or the other upon the determination of [a] specified event."  *Talley v. Mathis*, 453 S.E.2d 704, 705 (Ga. 1995) (quoting *Martin v. Citizens' Bank of Marshallville*, 171 S.E. 711, 713 (Ga. 1933)).  Plaintiff need only prove that Defendants' offerings qualify as "gambling consideration" under that common-law definition.  That inquiry does not turn on federal law.

Defendants' own cases confirm this reading.  *See* Robinhood Opp'n 8-10; Kalshi Opp'n 2-6.  *Talley v. Mathis* involved a contract dispute between two joint Kentucky lottery winners who had not gambled against each other.  453 S.E.2d at 705.  The court there did not decide whether the Statute of Anne could reach the Kentucky lottery.  Rather, it stressed that (1) "the State of Kentucky [was] not a party"; and (2) the State of Kentucky (the Statute of Anne loser) had acknowledged "the enforceability of that state's 'gambling contract' . . . through its agreement to pay the lottery proceeds" to plaintiffs.  *Id.*  The clear implication is that illegality is an affirmative defense that Kentucky *could* have raised (successfully or otherwise) had it been "a party" to the case and had it not otherwise "recognized" its lottery's "enforceability" by paying out.  *Id.*

2

The same goes for Defendants' other cases. *Dyer v. Benson* held only that a "dog fight is illegal" *because* it is "gaming." 69 Ga. 609, 609-10 (1882). *Martin*, 171 S.E. 711, defined "illegal consideration" as that consideration which "must fall to the one [party] or the other upon the determination of the specified event." *Id.* at 713. And *Hardin v. NBC Universal, Inc.* confirms that a plaintiff need only plead a "gambling contract," supported by "gambling consideration," to prevail. 660 S.E.2d 374, 375-76 (Ga. 2008). Each of those cases held that certain gambling is illegal under the Statute of Anne—not that a plaintiff must *separately* prove illegality (as an element of its case-in-chief) to prevail.

Kalshi Defendants also fail to show (at 2-3) the Statute of Anne requires a predicate *criminal* gambling conduct, *see* O.C.G.A.§ 16-12-21. Loss-recovery acts like the Statute of Anne are by their nature civil, *see Shenk v. Cohen*, 51 A.2d 298, 299 (D.C. 1947), as Kalshi Defendants concede (at 3), and as the Georgia legislature confirmed by codifying the Statute of Anne in Chapter 13 ("Contracts"), rather than Chapter 16 ("Crimes and Offenses"). The Statute of Anne does not cross-reference any criminal provision, and Georgia courts invoke common-law definitions of gambling (rather than criminal provisions). *See supra* pp. 3-4 (citing cases).

*Third*, Defendants fail to grapple with Plaintiff's authorities showing that federal authorization amounts (at most) to an affirmative defense. *See* Mot. 4 (citing cases). That rule makes abundant sense. On Defendants' view, Plaintiff would need to prove (as an element of its claim) that *no* provision of federal law authorized Defendants' conduct. Georgia courts, like federal courts, decline to put plaintiffs "to the all but impossible task of attempting to 'prove' a negative" in that way. *See, e.g.*, *Sutton v. Sullivan & Carden*, 364 S.E.2d 887, 889 (Ga. Ct. App. 1988); *Nat'l Commc'ns Ass'n, Inc. v. AT&T Corp.*, 238 F.3d 124, 131 (2d Cir. 2001). Robinhood Defendants' own cases (at 10) confirm it is the party "seek[ing] to *avoid liability*" that carries the

"burden" of proof. Robinhood Opp'n 10 (quoting *Weischelbaum v. Hayslip*, 56 S.E. 413 (Ga. 1907)); *see also Chamberlain v. Employers' Liab. Assur. Corp.*, 194 N.E. 310, 313 (Mass. 1935) (similar). Here, that it is Defendants raising federal statutory and regulatory law as a shield—a quintessential affirmative defense. *See* Mot. 4-5 (citing cases).

*Fourth*, even if Plaintiff did have to prove illegality as part of its case-in-chief, Defendants fail to justify why Plaintiff could not do so using only Georgia law. It is hardly "surprising," *cf.* Robinhood Opp'n 11, that Georgia would impose regulations on Defendants' gambling offerings that go beyond what the federal government proscribes. *See*, *e.g.*, O.C.G.A. §§ 16-12-20 *et seq.* And as Plaintiff explains, the conduct alleged in the Complaint goes to aspects of Defendants' businesses not regulated by the federal government. *See* Mot. 5 (citing Compl. ¶¶ 41-52).

Robinhood Defendants alternatively suggest that preemption *can* justify removal, so long as it is not merely "lurking in the wings." Robinhood Opp'n 11-12 (quoting *R.I. Fishermen's All., Inc. v. R.I. Dep't of Env't Mgmt.*, 585 F.3d 42 (1st Cir. 2009)). But their case held the opposite, allowing removal *only* because the "state statute expressly reference[d] federal law." *Id.* at 50. Here, Georgia's Statute of Anne does not even "expressly" contain an illegality requirement; much less "reference" federal law. As other courts have recognized, Kalshi's "plain vanilla federal preemption defense" is not a reason to stay in federal court. *See* Order, *Commonwealth v. KalshiEX LLC*, No. 25-cv-12595-RGS (D. Mass. Oct. 28, 2025), Dkt. No. 34.

2.    Defendants note the Complaint's passing reference to the federal Wire Act. Robinhood Opp'n 11; Kalshi Opp'n 5-6. But that reference merely anticipates a potential affirmative defense and cannot support federal-question jurisdiction. *See* Mot. 6 (citing cases). And Defendants' own cases confirm that "allegations in the complaint that are unnecessary to the

4

statement of the relevant cause of action cannot themselves support a claim of federal question jurisdiction." *R.I. Fishermen's All.*, 585 F.3d at 50; *see* Robinhood Opp'n 11, 12, 18.

**3.**    Kalshi Defendants (alone) insist this case "necessarily raises" a separate federal question:  where transactions on a federally regulated designated contracts market occur.  Kalshi Opp'n 9-10.  They do not cite a single source for this theory.  Nor could they:  States may determine (within the bounds of due process) whether Defendants have committed a tort under the laws of that jurisdiction.  And even setting aside that threshold federalism problem, it is well-established that for online gambling, "the gaming occurs where the bettor is located." *Tribe v. Polis*, 2025 WL 3459865, at *1 (D. Colo. Oct. 23, 2025).

**B.    Any Federal Issue Would Not Be "Disputed and Substantial"**

Defendants' purported federal issues are also not sufficiently "substantial."  Mot. 6-9.

**1.**    This case presents no "purely legal" question.  Robinhood Opp'n 12.  It is irrelevant whether federal law "authorizes" event contracts—preemption cannot sustain *Grable* removal, and Defendants' offerings are illegal under Georgia law.   And as the Eleventh Circuit has held, questions of "federal securities law[]" are "heavily fact-bound" and are not sufficiently "substantial" to justify *Grable* removal.  *AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1254 (11th Cir. 2025).

**2.**    Defendants fail to explain how this question will "control many other cases." Robinhood Opp'n 13.  As a glance at the caption confirms, Plaintiff brings *one* case—not "thousands."  And while Plaintiff has five other cases against Defendants in other jurisdictions, each of those cases turns on a distinct Statute of Anne.  Resolution of the merits of Georgia's statute will not bring those cases to an end.  Nor is five cases "many."

**3.**    Defendants cannot identify any "strong interest in having cases like these adjudicated in a federal forum."  Robinhood Opp'n 12.  That various States (including Georgia)

prohibit Defendants' conduct—and that certain States have launched their own investigations into Defendants' offerings—in no way casts doubt on the validity of any CFTC regulation.  To the extent Defendants claim the CFTC has *exclusive* authority, that argument sounds in preemption and cannot support *Grable* removal.  *See Franchise Tax Bd.*, 463 U.S. at 13-14.

    4.    Defendants have identified no reason that allowing a Georgia state court to interpret the scope of Georgia's Statute of Anne would somehow impede "the development of a uniform body" of federal law.  Robinhood Opp'n 14.  Indeed, the examples Robinhood Defendants cite (at 14) of "lawsuits [that] are ongoing in federal court" about Kalshi, including those in "the CFTC itself," only confirm that "securities cases will continue to be decided in federal court."  *AST & Sci.*, 143 F.4th at 1255.  That litigation will ensure uniformity of the federal questions that this litigation does not even raise—much less *necessarily* raise.

### C.    The Federal-State Balance Cuts Against Removal

    Regardless, creating a "federal forum" would disrupt the "congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314-15.  Defendants do not (and cannot) contest that Congress "ha[s] made no provision for a federal cause of action" permitting the recovery of unlawful gambling losses, making it unlikely it "would have meant to welcome any state-law tort case implicating federal law" into federal court.  *Id.* at 318-19.  While Robinhood Defendants claim that the *effects* of the litigation are not only "private" (at 14-15), recovering gambling losses is both the chief object and primary effect.  Their claim (at 14) that the CEA creates "private causes of action for parties injured by certain violations" only hurts their cause because recovering gambling losses is not one of those "certain violations."

## II.    This Court Cannot Remove Under CAFA

    Defendants cannot justify removing this *non-class* action under the Class Action Fairness Act.  They do not contest what every circuit to reach the question has concluded:  for CAFA to

govern, a state statute must feature the traditional class action requirements, to include numerosity, typicality, and commonality. *LG Display Co. v. Madigan*, 665 F.3d 768, 771-72 (7th Cir. 2011); *see also* Mot. 11-12 (collecting cases). Plaintiff's claim does not clear that standard. *See* Mot. 12.

1.    Robinhood Defendants ask this Court (at 16) to adopt a loose, functionalist view of CAFA's definition of a "class action." But CAFA "establish[es] 'simple' bright-line rules." *Adams v. 3M Co.*, 65 F.4th 802, 804 (6th Cir. 2023). Robinhood Defendants' cases (at 16) confirm this view. In *Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891 (8th Cir. 2017), a plaintiff brought her "action in her capacity as class representative," *id.* at 899. Similarly, in *College of Dental Surgeons of Puerto Rico v. Connecticut General Life Insurance Co.*, 585 F.3d 33 (1st Cir. 2009), a trade group brought claims on behalf of members and specifically "allege[d] that the pleaded facts qualif[ied] the case for treatment as a class action," *id.* at 36.

Robinhood Defendants argue, in the alternative (at 17-18) that Plaintiff could satisfy at least the typicality requirement of Rule 23. Even if true, that would be irrelevant. But it is not true. In *International Woodworkers of America, AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir. 1981), a trade group served as a named plaintiff alongside other, natural person named plaintiffs in a traditional class action (styled as such), *id.* at 1262, 1267-71. And *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021), held only that a federal court does not divest itself of CAFA jurisdiction over a class action—again, brought *as a class action*—when it denies class certification on the merits, *id.* at 1305.

2.    Defendants separately argue that Plaintiff had to bring its claim as a class action. *See* Robinhood Opp'n 16-17; Kalshi Opp'n 18-19. Nothing in the statute suggests as much. The phrase "*a* gambling consideration," O.C.G.A. § 13-8-3(b) (emphasis added), describes the *type* of consideration contemplated; it does not mean suits must be brought one at a time. Georgia courts

7

have long recognized that plaintiffs may seek to recover for distinct gambling transactions in a single suit. *See, e.g., Martin*, 171 S.E. at 712 (describing multiple "transactions in question"). And courts in other jurisdictions permit claims like Plaintiff's to proceed. *See, e.g., Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 796 (Ky. 2020); *Salamon v. Taft Broad. Co.*, 475 N.E.2d 1292, 1294-95 (Ohio Ct. App. 1984).

To be sure, gamblers may *themselves* bring a class action under Statute of Anne's first cause of action. *See, e.g., Hardin*, 660 S.E.2d at 375. But "after the expiration" of that six-month period, however, Georgia no longer permits gamblers to recover their own losses, whether individually or as a class. O.C.G.A. § 13-8-3(b). Rather, "any *person*" (singular) may bring suit, recovering funds not for the original gamblers but for "the joint use" of the relator "*himself* and the educational fund of the county." *Id.* (emphases added). This operates much like a traditional *qui tam* provision, which courts have held unremovable under CAFA. *See, e.g., Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850-55 (9th Cir. 2020). Nor do Defendants' cited cases suggest otherwise. *Salamon v. Taft Broadcasting Co.* held a complaint like Plaintiff's could survive a motion to dismiss. 475 N.E.2d at 1294-95. And *Patriots for Legal Equality, LLC v. Draft Kings, Inc.*, while noting a plaintiff's complaint lacked the specificity to survive a motion to dismiss under Massachusetts law, never suggested that a third-party plaintiff must use the class-action mechanism. 2016 WL 11972483, at *4-5 (Mass. Super. Ct. Feb. 23, 2016).

3.      Defendants cannot answer Plaintiff's sundry examples of courts rejecting CAFA removal of other, non-class actions. They insist *parens patriae* suits are inapposite because they are not "representati[onal]." *See* Robinhood Opp'n 17-18; Kalshi Opp'n 18-19. But neither is Plaintiff's suit, which seeks to vindicate a statutory right provided to it by Georgia. In any event, both suits "lack the . . . attributes of true class actions." *Washington v. Chimei Innolux Corp.*, 659

F.3d 842, 850 (9th Cir. 2011). Georgia's Statute of Anne, no less than California's PAGA, provides a separate mechanism for the original victims to "seek their own, individual judgments." Kalshi Opp'n 19 (describing *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850-55 (9th Cir. 2020)). And Defendants cannot explain why courts will not remove, under CAFA, corporations seeking to collect on claims assigned from multiple individuals. *See* Mot. 14 (citing *Atlas Data Privacy Corp. v. Blackbaud, Inc.*, 757 F. Supp. 3d 605, 610, 618-22 (D.N.J. 2024).

In any event, even if Plaintiff were considered, in a loose sense, to be bringing its claim "on behalf of" gamblers, the suit still would not be a "class action." *See*, *e.g.*, *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158-161 (3d Cir. 2013) (suit brought under a state procedural rule that "allows suits on behalf of an unincorporated association to be prosecuted by its members" was "properly understood as a suit by one entity, not by 'a conglomerate of individuals,'" and was therefore not a class action under CAFA) (citation omitted).

    **4.** Kalshi Defendants (alone) claim that this case is also a qualifying "mass action" under CAFA. Kalshi Opp'n 17-19. But as Plaintiff explained (at 12-13), this case is not one "in which monetary relief claims of 100 or more persons are proposed to be *tried jointly*." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). Additionally, this case would fall within CAFA's carveout where all injuries arose from an "occurrence in the State" and "resulted in injuries in that State" only. *Id.* § 1332(d)(11)(B)(ii)(I). As Kalshi Defendants' own case recognizes (at 18 n.14), that applies to "a series of connected events occurring over a longer period" no less than "a single moment in time." *Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 742 (11th Cir. 2020).

## III.    Kalshi Defendants' Invocation of Diversity Jurisdiction Fails

    Kalshi Defendants (alone) argue that this Court may exercise diversity jurisdiction on the grounds that all three non-diverse Defendants were fraudulently joined. But they fail to show there

exists "*no* possibility" Plaintiff may prevail against those entities. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (emphasis added).

**SGP.**  Kalshi Defendants' only argument against the joinder of SGP is that—in their opinion—the case against SGP is weak on the merits.  *See* Mot. 17-18.  But they admit that objection is "the case for *all* Defendants," Kalshi Notice of Removal 15-16 & n.14, Dkt. No. 1 (emphasis added).  And while they assert "Plaintiff's theory as to how the Susquehanna Defendants are liable" is "uniquely far afield," they offer no explanation for what is "unique." *Id.* If anything, Plaintiff's claims against the Susquehanna entities are comparatively straightforward: Susquehanna engages directly in "buying and selling event contracts," Compl. ¶¶ 3, 13-14, and was a direct counterparty the State's residents gambled against, *id.* ¶¶ 29, 41-52.

**SIG.**  Against SIG, Kalshi Defendants additionally argue (at 16) that the company is improperly joined as a parent.  But Plaintiff cited numerous cases (at 18) establishing that a parent can be liable for the conduct of its subsidiary, foreclosing fraudulent joinder claims.  Kalshi Defendants cite them (at 16 n.12) but make no effort to distinguish them.

**Webull.**  Because the Susquehanna entities were not fraudulently joined, this Court need not consider Webull.  Anyway, as explained above, it does not matter (*cf.* Kalshi Opp'n 12) that Webull Corp. is a parent of Webull Financial.  Nor does it matter that Webull never offered "sporting events" contracts.  Kalshi Opp'n 12-13 & n.9.  The Complaint covers all manner of "illegal, unregulated wagers," not just sports.  Compl. ¶ 17.  And while (at filing) six months had not run since the start of the Kalshi-Webull partnership, those "[s]ix months having [now] elapsed," "refiling is unnecessary." *Beran v. U.S.*, 759 F. Supp. 886, 891 & n.16 (D.D.C. 1991).

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court remand this case to state court "require payment of just costs and any actual expenses."  28 U.S.C. § 1447(c).

Date: December 15, 2025                         Respectfully submitted,

                                                /s/ *David C. Rayfield*

                                                David C. Rayfield
                                                Georgia Bar No.: 596706
                                                David R. Helmick
                                                Georgia Bar No. 344210
                                                WALDREP, MULLIN & CALLAHAN, LLC
                                                111 Twelfth Street, Suite 300
                                                P. O. Box 351
                                                Columbus, GA  31902-0351
                                                Tel: (706) 320-0600
                                                Fax: (706) 320-0622
                                                davidrayfield@waldrepmullin.com
                                                dhelmick@waldrepmullin.com

                                                Derek T. Ho (*pro hac vice*)
                                                Kyle B. Grigel (*pro hac vice*)
                                                KELLOGG, HANSEN, TODD, FIGEL &
                                                    FREDERICK, P.L.L.C.
                                                1615 M Street, N.W., Suite 400
                                                Washington, D.C. 20036
                                                Tel.: (202) 326-7900
                                                Fax: (202) 326-7999
                                                dho@kellogghansen.com
                                                kgrigel@kellogghansen.com

                                                *Counsel for Georgia Gambling Recovery LLC*

11

**CERTIFICATE OF SERVICE**

This is to certify that on this date I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted, this 15th day of December, 2025.

/s/ David C. Rayfield
David C. Rayfield
Georgia Bar No.: 596706

12