IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

GEORGIA GAMBLING RECOVERY LLC,   *

     Plaintiff,                 *

vs.                                *    CASE NO. 4:25-cv-310 (CDL)

KALSHI INC., *et al.*,             *

     Defendants.                *

_____

O R D E R

    Plaintiff filed this action in the State Court of Muscogee County against multiple Defendants, asserting claims under O.C.G.A. § 13-8-3. Defendants removed the action to this Court on the ground that the action presents a substantial and disputed question of federal law such that jurisdiction exists under 28 U.S.C. § 1331. Defendants alternatively assert that removal is proper under 28 U.S.C. § 1332 and the Class Action Fairness Act. Plaintiff responds that this Court lacks subject matter jurisdiction, and it filed a motion to remand. As discussed below, the Court denies the motion (ECF No. 35).

FACTUAL BACKGROUND

    Plaintiff Georgia Gambling Recovery LLC brought this action against multiple "prediction markets" and "market makers" to recover gambling losses allegedly suffered by Georgia residents. Plaintiff alleges that the prediction markets permit Georgia

residents to buy and sell "event contracts", which are defined under federal law. Compl. ¶¶ 2, 31, ECF No. 1-1. Purchasing these event contracts allows Georgia residents to "place bets" on the occurrence or non-occurrence of specified future events. *Id.* ¶¶ 2, 28. Plaintiff further alleges that prediction markets depend on liquidity supplied by market makers. *Id.* ¶ 3. In exchange for providing funds to the prediction markets, market makers allegedly receive "kickbacks" from the prediction markets. *Id.* Thus, when Georgia residents purchase event contracts on a prediction market, they "almost always face off against money provided by a money market." *Id.* ¶ 29.

Plaintiff alleges that Defendants Kalshi, Robinhood, and Webull all operate prediction markets that are available to users nationwide, including residents of Georgia.[1] *Id.* ¶¶ 32, 38-39. Kalshi, a federally designated commodities exchange, sources the event contracts offered on the Robinhood and Webull platforms, and Robinhood and Webull share in Kalshi's transaction fees each time an event contract is purchased through their platforms. *Id.* ¶¶ 9, 38-39. Defendant Susquehanna, along with one of the Kalshi

---

[1] "Kalshi" includes Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC. "Robinhood" includes Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC. Defendant "Webull" is Webull Corporation.

entities, are "market makers" that "provide liquidity by buying and selling event contracts."[2]  *Id.* ¶¶ 3, 50-52.

Plaintiff alleges that these prediction markets and money markets constitute illegal gambling under Georgia law.  *Id.* ¶ 53. Plaintiff maintains that Defendants have engaged in these illegal gambling operations for years in Georgia, resulting in "thousands of individuals within Georgia" losing "tens of millions of dollars."  *Id.* ¶¶ 6, 66.  Plaintiff further alleges that Defendants' offerings of event contracts "are also prohibited under federal law," asserting violations of the Interstate Wire Act of 1961, 18 U.S.C. § 1084.  *Id.* ¶¶ 54-56.  Based on these allegations, Plaintiff brought this action under O.C.G.A. § 13-8-3 against multiple Defendants, seeking to recover gambling losses incurred by Georgia residents.  Kalshi, Webull, and Susquehanna filed a notice of removal on October 2, 2025.  Robinhood then filed a notice of removal on October 7, 2025, to which all Defendants consented.  Plaintiff timely filed a motion to remand.

DISCUSSION

An action can only be removed from state court to federal court if the action could have been brought in federal court in the first place—that is, this Court must have subject matter jurisdiction.  28 U.S.C. § 1441(a).  All Defendants assert that

---

[2] "Susquehanna" is Susquehanna International Group, LLP and Susquehanna Government Products, LLLP.

this Court has subject matter jurisdiction based on both federal question jurisdiction and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Additionally, Kalshi argues that this Court may exercise diversity jurisdiction over this action. Plaintiff argues that the Court lacks federal question jurisdiction because (1) no federal question appears on the face of Plaintiff's complaint, (2) this action does not raise a substantial and actually disputed federal question, (3) this action is not a "class action," and (4) complete diversity does not exist. For the following reasons, the Court finds that the Court has federal question jurisdiction. Therefore, addressing Defendants' other bases for jurisdiction is unnecessary.

Defendants argue that this Court has federal question jurisdiction under 28 U.S.C. § 1331 because resolution of Plaintiff's state law claim necessarily raises a substantial and actually disputed issue of federal law. No one disputes that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Typically, federal-question jurisdiction "is invoked by . . . plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). But "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* "Th[is] doctrine

captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.* Thus, when assessing federal issues embedded in state law claims, the Court will assess whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Generally, this determination is "based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983)). Ultimately, federal question jurisdiction exists if "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal.*, 463 U.S. at 27-28.

Plaintiff here does not assert a cause of action based directly on federal law. Its claim rests upon a Georgia statute that arguably allows recovery of illegal gambling losses. But determining whether the event contracts here are illegal necessarily requires an examination of federal law and its potential preemptive effect on these contracts. Plaintiff argues

that Defendants' federal preemption argument is an affirmative defense and cannot be considered in determining whether federal question jurisdiction exists. Plaintiff further maintains that for this federal question to support federal question jurisdiction, it must be an essential element of Plaintiff's claim. Plaintiff argues that "illegality" is not an essential element of an action brought pursuant to O.C.G.A. § 13-8-3. Plaintiff over-simplifies the nature of federal question jurisdiction and ignores the plain meaning of the Georgia statute upon which it relies.

O.C.G.A. § 13-8-3 provides that all "[g]ambling contracts are void," and authorizes "any person" to recover "[m]oney paid or property delivered upon a gambling consideration" within four years of the gambling loss. The Georgia Supreme Court has explained that the statute reflects the public policy "that the winner shall not be protected in his unlawful gains, and that the loser, though party to an illegal wager, may sue and recover back the money." *Hardin v. NBC Universal, Inc.* 660 S.E.2d 374, 375 (Ga. 2008) (quoting *Dyer v. Benson*, 69 Ga. 609, 610 (Ga. 1882)). To state a claim under O.C.G.A. § 13-8-3, a plaintiff "must allege that a 'gambling contract,' which was supported by a 'gambling consideration,' existed between the parties." *Hardin,* 660 S.E. 2d at 375.

Georgia courts have further recognized, however, that whether a gambling contract is void under O.C.G.A. § 13-8-3 depends on

6

whether the contract is unlawful under the law governing its validity. In *Talley v. Mathis,* 453 S.E.2d 704 (Ga. 1995), for example, the Georgia Supreme Court held that O.C.G.A. § 13-8-3 did not void a Georgia contract relating to the purchase of a Kentucky lottery ticket because the lottery was lawful where the contract was formed. The Court reasoned that "the lottery was legal in Kentucky and the purchase by a Georgia resident of a ticket in that lottery would not necessarily be an immoral or illegal act." *Id.* at 705. And when contracts are not "contrary to law, the courts are bound to enforce them as made." *Id.* at 706 (quoting *Cauthen v. The Central Ga. Bank*, 69 Ga. 733(3) (Ga. 1882)).

Similar to *Talley,* whether the challenged event contracts here are unlawful gambling contracts cannot be determined by reference to Georgia law alone. Therefore, Plaintiff's ability to obtain relief depends on whether the challenged event contracts are unlawful under the law governing their validity.

Congress, through the Commodities Exchange Act ("CEA"), vested the Commodity Futures Trading Commission ("CFTC") with "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery" traded on CFTC-designated exchanges. 7 U.S.C. § 2(a)(1)(A). The CEA defines "swaps" and "event contracts" to include agreements whose value depends on the occurrence or nonoccurrence of future events. *Id.* §§ 1a(47)(A)(ii); 7a-2(5)(C)(i). The CFTC is further authorized

to determine whether event contracts listed on CFTC-designated exchanges are "contrary to the public interest" including contracts involving "activity that is unlawful under any Federal or State law" or "gaming". *Id.* § 7a-2(5)(C)(i).

Plaintiff alleges that Kalshi is a CFTC-designated commodities exchange that offers event contracts on its own platform and through Robinhood and Webull. Compl. ¶¶ 31-32; 38-39. As a result, whether the contracts at issue are unlawful gambling contracts—or instead federally authorized event contracts—cannot be resolved by reference to Georgia law alone. Thus, Plaintiff's ability to sustain a claim upon which relief may be granted necessarily depends on the interpretation and application of the CEA and the scope of the CFTC's exclusive jurisdiction.[3]

The Supreme Court's decision in *Grable* provides guidance here. In *Grable,* the plaintiff's ability to recover under a state-law quiet title action depended on whether the plaintiff complied with a federal tax-notice statute. 545 U.S. at 315. As in *Grable,* the resolution of whether the event contracts are governed exclusively by the CEA—and whether federal law preempts the application of Georgia law to those contracts—presents a "nearly

---

[3] In addition, Plaintiff's Complaint expressly alleges that Defendants' event contract offerings violate the Interstate Wire Act of 1961, 18 U.S.C. § 1084. Compl. ¶¶ 54-56. These allegations further confirm that resolution of Plaintiff's claim necessarily requires interpretation and application of federal law.

'pure issue of law'" that will likely be "dispositive of the case"
if Defendants' position ultimately prevails. *Empire Healthchoice
Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (quoting R.
Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal
Courts and the Federal System 65 (2005 Supp.)). Further,
Plaintiff's claim could conflict with the action of a federal
agency, which has an interest in a federal forum adjudicating that
federal agency's authority under federal law. *Id.; see also
Grable*, 545 U.S. at 315 ("The Government . . . has a direct interest
in the availability of a federal forum to vindicate its own
administrative action."). Lastly, exercising federal jurisdiction
over this action and others similar to it would not likely have a
significant effect on the federal-state division of labor. *Grable*,
545 U.S. at 315.[4] Accordingly, because Plaintiff's right to relief
necessarily depends on the resolution of a substantial question of

---

[4] For the sake of completeness, the Court distinguishes the present case
from *Adventure Outdoors v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008).
Unlike *Adventure Outdoors*, where the Eleventh Circuit concluded that a
state-law defamation claim did not raise a "substantial issue of federal
law" because the asserted federal issues were fact-bound and situation
specific, the federal issue presented here is a purely legal question
and is arguably dispositive of Plaintiff's claim if Defendants' position
prevails. *Id.* at 1301. Moreover, the Court's concerns in *Adventure
Outdoors* that exercising federal jurisdiction would open the doors too
wide to numerous claims do not exist here. Unlike the general law of
defamation that the Court in *Adventure Outdoors* observed commonly appears
in state law causes of action, *id.* at 1302, the federal issue here arises
from a narrow federal statute that Defendants contend grants exclusive
federal authority over the legality of the event contracts that give
rise to Plaintiff's claims.

federal law, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

CONCLUSION

Lawyers (and sometimes judges) often make the simple complicated.  But sometimes they also oversimplify. The pending motion presents the temptation to do either.  The Court here attempts to avoid both.  Congress has conferred jurisdiction on the federal courts if a civil action arises under a federal statute.  The Courts have consistently rejected an over-simplified interpretation that would require a federal statute to be the sole basis for the claim for a federal court to have jurisdiction. Courts have sometimes over-complicated this issue by making the distinction between an affirmative defense and an essential element to be resolved as part of Plaintiff's claim.  Synthesizing these cases, the Court concludes that for federal jurisdiction the plaintiff's right to relief must be dependent on the resolution of a substantial question of federal law.  Plaintiff here contends that it is entitled to recover gambling losses arising from contracts that are illegal under Georgia law, while Defendants contend that those same contracts are authorized and exclusively governed by federal law.  Thus, an essential element of Plaintiff's claim, the legality/illegality of the contracts, necessarily depends on the application of federal law.  Because Plaintiff's right to relief depends upon the resolution of a substantial

question of federal law, Plaintiff's motion to remand (ECF No. 35)

is denied.

    IT IS SO ORDERED, this 2nd day of February, 2026.

                                        S/Clay D. Land
                                        CLAY D. LAND
                                        U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA